WILLIAM W. DONOGHUE, Plaintiff-Appellant, *v.* KOHLMEYER & COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-747

Opinion filed August 30, 1978.

Joel J. Bellows and Charles B. Bernstein, both of Bellows & Associates, of Chicago, for appellant.

James M. Spiro, of Chicago (Joshua Sachs, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, William W. Donoghue, appeals from a judgment in favor of defendants dismissing his complaint, confirming an arbitration award in favor of defendants, and entering judgment on the award.

This controversy arose out of a contract entered into between plaintiff and the defendant Kohlmeyer & Company (hereafter the "partnership"), a partnership engaged in the securities and commodities brokerage business. The partnership's principal offices are located in Louisiana. Since 1973, it has been in voluntary liquidation and its affairs have been handled by several liquidators, one of whom is defendant Herman Kohlmeyer, Sr.

By the terms of the contract entered into by plaintiff and the partnership, plaintiff was admitted as a limited partner effective June 29, 1972. The agreement further recited that plaintiff had contributed his membership in the Board of Trade of the City of Chicago (hereafter referred to as "CBOT") to the capital of the partnership. The contract provided that the partnership was to have the full use of plaintiff's CBOT membership, but that absolute ownership of the membership was to be retained by plaintiff. The value of plaintiff's CBOT membership was at all times after the execution of the agreement shown on the partnership's books as an asset of the partnership.

After the partnership went into liquidation, its liquidators requested that plaintiff sell his CBOT membership and remit the proceeds to them. Plaintiff refused. On May 28, 1975, the partnership filed a claim with the Arbitration Committee of the CBOT. The claim recited that the aggregated amount of claims of subordinated tenders of the partnership exceeded the assets available to satisfy such claims. The essential provisions of the agreement were set out and it was stated that the partnership articles specifically provided that the capital of the partnership would include the value of the partners' memberships. The partnership sought to enforce the terms of the agreement and to compel plaintiff to transfer his CBOT membership or its cash value to the liquidators. The parties thereafter executed an arbitration agreement which provided that the award made by the arbitrators "shall be final and conclusively binding upon us and each of us * * *." The agreement also recited that the parties would "perform and·fulfull the final award in the premises, without recourse to any other court or tribunal." The final award was expressly made appealable to the CBOT Committee of Appeals.

On October 29, 1975, plaintiff's attorney informed the arbitration committee that plaintiff's consent to arbitration was predicated upon two conditions: first, that any award in the partnership's favor would be offset by plaintiff's claims against the partnership; and second, that any award

against him would not exceed $55,000, the value of a CBOT membership at the time demand was made upon plaintiff for the membership. The partnership agreed to these conditions.

On May 20, 1976, plaintiff submitted his reponse to the partnership's arbitration cliam. In it he stated that in 1972 he was approached by Howard Fisher, the general partner in charge of the partnership's Chicago operations, regarding the possibility of the partnership employing him as its floor manager on the Chicago Mercantile Exchange (hereafter the "CME"). Since ownership of a CME membership was required for the position, the partnership transferred one of its memberships into plaintiff's name. To avoid the appearance of a sham transaction, plaintiff ostensibly was to have unrestricted use of the CME membership. Plaintiff later was informed that the CME objected to his use of the membership on the ground that he was a nonprincipal. To satisfy the CME requirements, the partnership agreed to list plaintiff as a nominal principal. In return, plaintiff pledged his CBOT membership as security for the return of the CME membership. Plaintiff claimed that it was agreed upon termination of his employment he would return the CME and the partnership would release its security interest in the CBOT membership. Plaintiff maintained that when he entered the contract he never intended to become a partner. In 1973, plaintiff sold the CME membership upon the partnership's demand and directed the CME to remit the proceeds to the partnership. Plaintiff requested a finding in arbitration that the partnership could claim the CBOT membership only if it agreed to return a CME membership to plaintiff.

On June 2, 1976, the arbitration committee ruled in favor of the partnership and ordered plaintiff to pay $52,525. Plaintiff did not appeal the award to the CBOT Committee of Appeals, nor did he petition the circuit court to contest the award as authorized by the Illinois Uniform Arbitration Act. Ill. Rev. Stat. 1977, ch. 10, par. 112.

On September 3, 1976, plaintiff filed the present complaint against defendants. In the first count plaintiff sought to enjoin enforcement of the award on the ground that the agreement by which plaintiff became a partner was induced by representations of Kohlmeyer, Sr., which later proved to be false. In particular, plaintiff charged that Kohlmeyer, Sr., through Fisher, verbally agreed that the following conditions would be placed upon the agreement:

> (a) Kohlmeyer & Company's security interest in plaintiff's CBOT membership would be released upon plaintiff's return of the CME membership to the firm;
> (b) Kohlmeyer & Company would not list plaintiff's CBOT membership as an asset of the firm and would not make the membership available for the satisfaction of creditors' claims;

(c) The nominal listing of plaintiff as a principal for purposes of satisfying CME requirements did not render plaintiff a partner in the firm;

(d) The agreement was solely a security device and created no other interest by which either party could claim the property of the other; and

(e) Plaintiff's CBOT membership would in no way be jeopardized.

Plaintiff alleged this verbal agreement was breached when the partnership filed its claim seeking to enforce the written agreement and to require plaintiff to transfer his CBOT membership or the proceeds thereof to the partnership. Plaintiff prayed that the arbitration award be held invalid and that the partnership be enjoined from enforcing the award.

Count II was directed against Kohlmeyer, Sr., individually, and as agent of the partnership. Plaintiff charged that Kohlmeyer, Sr., made the verbal misrepresentations to induce plaintiff to execute the written agreement and that Kohlmeyer, Sr., never intended to be bound thereby. Plaintiff sought actual and punitive damages.

Count III recited that at the time plaintiff executed the agreement, defendants represented to him that the partnership was in sound financial condition when in fact it was experiencing financial difficulties. Plaintiff claimed that he had relied upon these representations to his detriment, requested that all agreements between the parties be rescinded, and asked that any claims defendant have be released and discharged. Plaintiff also prayed for an accounting and for a receiver.

Plaintiff in count IV charged that defendants were dissipating the assets of the partnership in contravention of his rights as a limited partner. Plaintiff alleged that Kohlmeyer, Sr., and members of his family were receiving preferential treatment in the liquidation proceedings. Plaintiff asked that defendants be enjoined from in any manner disposing of the partnership's assets.

On September 17, 1976, defendants filed a special and limited appearance objecting to the court's jurisdiction. In their motion defendants set up the arbitration award as a bar to further litigation of the issues. Defendants also attacked the court's exercise of in personam jurisdiction on the ground that the partnership is based in Louisiana with no employees, agents, or representative in Illinois. Defendants had been served personally in Louisiana.

Plaintiff filed a reply in which he stated that the written agreement was entered into by the parties in Illinois, that he was to perform in Illinois, and that the fraudulent representations were made in Illinois.

On January 7, 1977, the trial court dismissed the complaint. The court also confirmed the arbitration award and entered judgment thereon.

■■■ We shall first consider the argument that dismissal of the complaint was proper because the trial court lacked in personam jurisdiction over defendants. Section 20 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 20) authorizes the filing of a special appearance "for the purpose of objecting to the jurisdiction of the court over the person of the defendant." Defendants' motion was not limited to an objection to the court's exercise of in personam jurisdiction. The motion set up the arbitration award as a bar to any further litigation. Although this portion of the motion was denominated as an objection based upon the lack of subject matter jurisdiction, it was essentially a plea of res judicata. Any action taken by a litigant which recognizes the matter as being before the court amounts to a general appearance unless such action was taken solely for the purpose of objecting to jurisdiction. (See *McKnelly v. McKnelly* (1976), 38 Ill. App. 3d 637, 348 N.E.2d 500.) Since defendants did not so limit their motion, it constituted a general appearance.

We next consider whether the present action is barred by the arbitration award.

■■ Any decision by the arbitrators, within the scope of the arbitration agreement, is binding upon the parties and cannot be attacked except upon the grounds enumerated in section 112 of the Uniform Arbitration Act. (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 363 N.E.2d 460.) Under that section, vacation of an award is warranted where it was procured by fraud, where any of the arbitrators are guilty of corruption, or where the arbitrators exceeded their powers. Since none of these grounds were set forth in the complaint, the arbitration award finding plaintiff to be a partner by virtue of the written agreement must be confirmed.

It does not follow, however, that because the arbitration award must be confirmed the trial court properly dismissed plaintiff's complaint. Despite the salutary purposes of the Uniform Arbitration Act, that is, to achieve a resolution of the differences between the parties in a more expeditious and less expensive manner (*Pillot v. Allstate Insurance Co.*), the parties are bound to arbitrate only those issues which by clear language they have agreed to arbitrate. (*Floód v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.) The determination of the scope of the arbitration agreement is arrived at through an examination of its language, unextended and unenlarged either by construction or by implication. *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 248 N.E.2d 289.

■■ When we examine the arbitration agreement in the present case, it is apparent that the only issue submitted for determination was whether, by terms of the written agreement, plaintiff became a limited partner of the partnership and thereby contributed his CBOT membership to the capital of the partnership. The arbitrators found that plaintiff was a limited partner

and, therefore, that the partnership could enforce the terms of the agreement requiring plaintiff to make the proceeds of his CBOT membership available for the satisfaction of creditors' claims. The arbitrators did not decide whether plaintiff's execution of the agreement had been induced by any misrepresentations Kohlmeyer made. In his complaint plaintiff alleged that Kohlmeyer, Sr., acting as agent for the partnership, made certain misrepresentations which were not incorporated into the written agreement. Since the arbitration agreement determines the scope of an arbitrator's authority, the parties validly could limit that authority to a determination of a single issue arising out of the dispute. Plaintiff was not bound to submit any issues in the nature of a counterclaim at the arbitration proceeding. Such issues were properly reserved for determination by the trial court. *Vasilakis v. Safeway Insurance Co.* (1977), 46 Ill. App. 3d 369, 361 N.E.2d 1.

■■ Since plaintiff is bound by the arbitrators' finding that he became a limited partner in the partnership by virtue of the written agreement, he cannot now attempt to rescind the agreement. Such relief would be inconsistent with the arbitration award. Plaintiff, however, may seek to recover damages for any misrepresentations which the law recognizes since these issues were not before the arbitration committee and therefore were not decided by it.

For the reasons stated, that part of the judgment of the circuit court of Cook County dismissing plaintiff's complaint is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion. That portion of the judgment confirming the arbitration award is affirmed.

Affirmed in part, and reversed and remanded in part.

JIGANTI, P. J., and SIMON, J., concur.